Our final case is number 251487, Inneos LLC v. Opticis Co., Ltd. May it please the court, the improved multiplexing device of the 416 patent is designed to be used for wavelength division multiplexing systems for fiber optic data communications and telemetry. Telecommunications systems. The core innovation is a device that is compact and cost effective and puts multiple optical signals on a single piece of fiber optic cable. Can I just ask you, has the patent expired? It has. It expired in January of 2025 while this proceeding has been pending. In concluding that the challenged claims of the 416 patent are unpatentable as obvious in view of Corita combined with Lemhoff, the board made two key errors in both cases because it ignored the main thrust of the claimed invention. First, the board's construction of optical combiner is erroneous and over broad. And second, the board's conclusion that Corita teaches arranging collimated output signals into quadrants on a focusing lens is unsupported by record evidence and therefore erroneous. On the claim construction issue, INEOS proposed a construction that an optical combiner is an integrated sub-assembly of optical components from multiplexing light of different wavelengths, which includes an integrated pre-aligned connector with a stop to hold the single fiber optic cable. Now that's a mouthful, but most of that language is structural support for the verbs that appear in the preamble and elsewhere in the claim. The two disputed portions are integrated sub-assembly and integrated pre-aligned connector. The patent is clear through... Wait a minute, are we talking about their construction was not accepted by the board? Sorry? Was their construction accepted by the board? The board adopted a construction that was much closer to Optitis' construction than it was to ours. But it wasn't the construction that you just recited to us. No, that was the construction we proposed that the board erroneously rejected. The board's construction was an optical device that couples optical signals of different wavelengths into an optical fiber. So both of these integrated terms are missing from that proposed construction. The first of those, an integrated sub-assembly, you will hear that the term sub-assembly does not appear in the claim language. It's our requirement that it be integrated. So the claim language does not specifically require integration, but it's clearly articulated throughout the specification. One place where it appears in the specification is at column 3, line 39. And also at column 4, line 62 of the patent. And the reason that integration is important is because the innovation here is this compact, cost-effective fiber optic combiner for use in communications. I don't see how you can say there's a claim limitation that doesn't have any support in the claim language. Sorry, the claim limitation is optical combiner in the preamble of claims 1 and 7. It doesn't say integrated. It does not say integrated, and it's our position that in construing that term, optical combiner, it's necessary with reference to the specification and the articulated positions of the specification that it's narrowed, not by words of express definition, but by repeated descriptions of the present invention and repeated disclaimers of claim scope. Okay, I mean, what the board said, I understand. They probably said more, but at appendix 11, they say the specification indicates blah, blah, blah, but it does not describe the invention as necessarily having any of those characteristics. And then it goes on to say why that's true, and they say, we conclude that none of the unrecited limitations identified for the patent owner are required by the claims. So tell me why the board is wrong. The board is wrong for a couple of reasons. First, there's a misperception by arguing that an integrated subassembly is something that is a part that's been combined as a whole. Both the board and Opticis misconstrued that as being equivalent to the specification's discussion of piece and part, and went down a different path of saying, where does the specification say that integrated subassembly is a requirement? The specification says that at 339, that integration is required. It does not use the term subassembly. The term subassembly, so column three, line 39, the plastic molded coupling module 16 is formed by integrating an on-axis offset collimating lens array, a redirectional prism. Where does it say that's a requirement? I'm sorry. Where does it say that's a requirement? The module is something that appears in each of the embodiments. It's how the invention is referred to. The present invention is referred to as a module repeatedly. The references, particularly relevant references to the present invention, which the case law supports as being supporting a narrowing construction, are at line one, column 52. And column two, line 11, both refer to combined as a single part or multiple parts. But your construction would read out figure 10, right? It would not read out figure 10. Figure 10 is exemplary illustration of certain features that are different than the other features. It does not purport to be a complete presentation of the entire invention. And this is particularly noteworthy. The third embodiment, figures six and seven and eight, do not show a integrated fiber optic connector, but that's something that's specifically described in the language of the specification. So continuing with that and continuing with the specification on the fourth embodiment, it says the focusing lens is supported in its position shown in figure 10 by means known to those skilled in the art. So again, it's a reference to the fact that although the complete structure is not shown, the invention of all four embodiments include an integrated hole. There's another error in the board's construction, and it has to do with reasoning that the construction has to be broad enough to include dielectric filters and waveguides. Is that in the board opinion? It's, I believe, at appendix 12. Okay, that's the right one. Where the specification specifically says that the point of the invention is to avoid the use of dielectric filters and waveguides. Claims six and nine, dependent claims, reference without dielectric filters and waveguides. And the board reasons that, therefore, claim one and claim seven must be broad enough to include dielectric filters and waveguides. That's a misreading of cases like Liebel-Flarsheim and Littlefuse. And instead, cases like SyMed make clear that if the specification denigrates specific features or specific parts of the prior art, those can't be read into the claim. Unless the court has other questions on that point, I'd like to turn to the second issue, which is Carita and quadrants. There's no support in the record that Carita figure three teaches on axis quadrants in the focusing lens. Carita figure three shows a side view of a lens 30, and Carita makes clear that the depiction here is conceptual, and that figure three is similar to the figure shown in figure two. Paragraph 15 of Carita is where that similar language appears. Figure two is a three-by-three array, and therefore, the same logic cannot apply to call it to be radial sectors. They're shown to be three rows of three collimating lenses. But it shows two-by-two also. And figure three does show two-by-two. What's missing is the assumption, as stated by Professor Wellner, that it must be that those show up on a aligned on-axis collimating lens that has regular optics. But we know from figure two that the optics in figure two of Carita are not necessarily those kinds of regular optics. And we also know from the specification of the 416 patent that prior art includes devices that have concentric arrangement of light signals that go through a Fresnel lens. And further, in Lamothe, figure three there shows concentric arrangements of the apertures there. I see that my— The prior artist is closing a properly aligned two-by-two, right? The board concluded that figure three discloses an on-center, on-axis lens. But there's nothing in the record, either the prior art or the expert testimony, that supports that in any kind of definitive way. It's all, if you want to have it on center, then this shows it on center. But Lamothe actually—excuse me, Carita actually teaches away from that by saying it's similar to the three-by-three array. Okay. Thank you. Mr. Jones. Good afternoon, Your Honors, and if it may please the court, Michael Jones for the IPR petitioner, Opticist. So there are two issues in this case. One is reviewed for substantial evidence, and that's the factual findings regarding Carita. And the other is reviewed de novo. That's the clank construction issue. If I may, I'd like to first start with the substantial evidence question and what the board found with respect to Carita. So this is pretty straightforward. We can look at figure three of Carita, just like the board did, and we can see the two-by-two arrangement on axis focused through the lens, and that's the teaching the board identified. And Counselor Mr. Mammon said there's no support for that. I disagree. It is shown in Carita at Appendix 1191, but also it was explained by our expert. So at Appendix 1000 to 1005, our expert, Dr. Willner, explained how to interpret a figure like figure three. And then at Appendix 1075 to 78, he further explained precisely why Carita's figure three is on axis. And the short answer is if it wasn't on axis, you'd have significant loss. And you can just look at the figure. We highlighted it at page 51 of our brief. What about the prosecution, the conception diagram that was in the record? Yeah, so that is highlighted because it looks just like Carita. So we got the notebooks in this case, and in the prosecution history and the notebooks of the conception, there's a diagram that is a two-by-two arrangement that looks just like Carita. So in short, on this first issue, the board identified the argument. It identified where in the prior art the limitation is taught. It presented the expert testimony. This is Appendix 24 to 26. It said why petitioner's expert, Dr. Willner, supported the finding of on axis and what was shown in the reference. It also looked at Dr. Levy and his testimony, and it found that it was not credible. And in particular, they found that Dr. Levy's testimony was not credible for the same reason raised by Mr. Mammon. And that's that he pointed to the other figure. And Judge Dyke, this is the point you raised. They're pointing to Figure 2, which is not what we rely on. We're pointing to Figure 3, which plainly shows a two-by-two that teaches the reference, teaches the limitation. So if there are no further questions on the fact finding from the board, I'd like to turn to the claim construction issue. I'd like to start with a question, Your Honor, Judge Dyke, you proposed, because I think it goes to a core weakness of the patent owner's case. You asked, where is there a requirement for integration? There isn't. There is no passage in this specification that lines up with patent owner's proposed construction. There is no definitional language, and Mr. Mammon admitted that. He said there are no words of expressed definition. So if you look through, there's a laundry list of descriptions of the present invention. There's 14 of them. And they describe different features that an optical combiner may or may not have. And Judge Prost, to your point, this is what the board recognized in Appendix 11. There's a list of features that could be included in an optical combiner, but they're not necessary. So we have a situation here where the board did exactly as this court has instructed. It looked at the intrinsic record, and it found no disavow, no disclaimer, no clear definition. So then it turned to the specification and articulated a plain meaning. And it gave a basis for that plain meaning. And that's Column 1, Lines 14 to 16. And I think it's worth looking at that. This is the— Can you talk about the present invention? Yeah. So there's a lot of recitations of the present invention, Your Honor. The very first recitation comes in Column 1, Line 14. And what it says is, What you'll notice is there is no reference to an integrated subassembly. There's no reference to an integrated pre-aligned connector. What that does sound like is a lot like the board's construction, which I'd like to read to the court. The board's construction is an optical device that couples optical signals of different wavelengths into an optical fiber. So again, what we have here is the board doing exactly as it's told. No lexicography, no disavow, plain meaning applies, well supported in the spec. Then the board took it one step further. They also looked at the extrinsic evidence. They looked at a dictionary definition and said that was also aligned with their construction. So overall, this is an unremarkable and pretty standard application of this court's precedent. And with that, I'd like to highlight one last point about the client construction. And this is a question you raised, Judge Prost. Patent owner's construction absolutely excludes embodiments. It excludes both Embodiment 3 and Embodiment 4. If you look at Embodiment 3, what you'll see are discrete components mounted on a substrate. And then Embodiment 4, which is in Figure 10, Your Honor, you have a housing with some of the components, and then you have the lens explicitly external to the housing, rather than integrated within the Housing 319. So again, we have a situation here where the board did what it was supposed to, didn't read in embodiments, didn't exclude embodiments, and instead produced a construction well aligned to the specification. The last point I'd like to quickly address, if I may, Mr. Mammon suggested that the board at Appendix 12 was reading in a requirement for waveguides or dielectric waveguides. That's not what the board's opinion at Appendix 12 was about. What the board was doing was acknowledging that the present invention is non-limiting in this patent. So some articulations of the present invention say absence of dielectric filters, absence of waveguides. So they were highlighting the fact that since that's not part of Claim 1, it's part of Claim 6, present invention in this specification is not used in a way that's limiting. That's all they were doing. Unless there are any further questions, Your Honors? Okay. Thank you.  So I'd like to touch quickly on several things that my friend Mr. Jones referenced. The first one is Dr. Wilner's comments, an explanation of the geometry of 4x4 radial sectors. If you look at Appendix 1002, Paragraph 88, he says, if the lasers and collimating lenses are aligned with each other such that the output of the lasers is directed to collimating lenses and the collimating lenses are in turn radially arranged around the focusing lens, then you end up with quadrants. And those assumptions, those if and if, mean that this is not any kind of explanation that it is necessarily that way in Korea. It's an explanation of geometry, but there's a missing point there. Second point is, to Your Honor's question about the file history, there's an excerpt, a cropped excerpt at page 52 of Opticis' brief. The full page appears at Appendix 808 and specifically references quadrants and a collimated image plane. And therefore, to say the excerpt alone is enough to infer quadrants is simply not accurate. The next point is, Dr. Wilner explained why coupling efficiency, if that were a goal, is something that Corita would do. There's no teaching in Corita that coupling efficiency is a goal of Corita. It is a goal of the 416 patent and it's expressly disclosed. And I integrated Ferrell is in the specification at column 3, line 17. I see that I'm out of time. Okay, thank you. Thank both counsel and cases submitted. That concludes our session for this afternoon.